## WALTER EVERETT *vs.* JOSEPH STOWELL.

In an action brought by the assignee of an insolvent debtor to recover back money paid by the debtor to a creditor by way of preference, it is incumbent on the plaintiff to establish by competent and sufficient evidence that the defendant at the time of receiving the money had reasonable cause to believe the debtor insolvent; and if there is no evidence to show that the defendant was aware of any fact indicating the debtor's insolvency, such as a failure to meet debts which had fallen due, or an excess of liabilities over the means of meeting them, the judge may properly direct a verdict for the defendant.

CONTRACT brought by the assignee of S. A. Stowell, an insolvent debtor, to recover back the sum of nine hundred dollars paid by Stowell to the defendant, about the 20th of September 1864, by way of preference as a creditor.

At the trial in the superior court, before *Morton*, J., it appeared that proceedings in insolvency were commenced against S. A. Stowell by creditors on the 10th of October 1864. He lived in Haverhill, and had been in partnership with one Perley, in the business of making harnesses and carriages, from December 1863 to June 1864, when the partnership was dissolved, and Perley retired, taking out about $900 which he had contributed to the firm, leaving the residue of the property with the debtor, and taking from him a bond in the penal sum of $2500,

signed by the defendant as a surety, with condition to save Per-
ley harmless from the partnership debts. A schedule was an-
nexed to the bond showing debts to the amount of $2194. The
defendant, who was a brother of the debtor, lived in Lawrence.

There was much evidence to show that the debtor was actu-
ally insolvent at the time of making the payment to the defend-
ant, and the principal question was, whether the defendant had
reasonable cause to believe him insolvent. Upon that question
the evidence was as follows:

The debtor being sick, his examination in insolvency was put
in evidence by agreement, in which he testified that he put into
the firm of Stowell & Perley about $1500 in stock; that at the
dissolution, in June 1864, the firm owed about $2000; that he
offered his brother's name as a surety on the bond; that he con-
tinued in the business alone till about the 1st of the following
October, when he sold the principal portion of his stock to Mat-
thew Paul; that in the mean time he had paid the debts outstand-
ing against the firm, some in cash and some in notes; that he paid
the bills as they became due, and for such as were not cash bills
he gave notes in compliance with the request of the creditors;
that he had two shops in Haverhill, one on Water Street and
one on Stage Street; that the debt of $900 to the defendant was
for money borrowed in June, at the time of dissolving partnership
with Perley, for which he gave his note on demand; that he also
owed his brother $700 for money borrowed at different times
within three or four years, and the firm of Stowell & Perley also
owed him about $200 for money lent to the firm; that within
six months before the commencement of the proceedings in
insolvency he had also sold to the firm of which the defendant
was a member, (they being livery-stable keepers) for cash, five or
six carriages, such as they used in their business, and worth
from $100 to $200 each; that in September he sold out the
most of his stock at the shop on Stage Street for $1900 in
cash, of which he paid $900 to the defendant, and the rest to
other creditors, most of whom he named; that after paying out
this money he thought there was about $2500 of debts out-
standing against him; that he met with but few losses from bad

debts, and his principal loss was caused by not understanding the carriage business, and keeping a large number of men, paying them high wages, not being able to make carriages that pleased his customers or to get so good prices as he might otherwise have received.

The examination of the defendant, in the insolvent court, was also put in evidence, in which he testified to some of the matters above mentioned; stated that he knew nothing of the dissolution of his brother's partnership with Perley until his brother told him that he had bought out Perley and wished to know if the defendant would lend him $900 to pay Perley with; that he lent the money, and at his brother's request signed the bond, believing him to be fully able to pay the debt: and that this was all he had to do with or knew of that transaction. He further stated that at the time of paying the $900 his brother told him he had sold out the carriage business, but he knew of no other change in his brother's business; that he made no examination into his brother's financial affairs; that he did not remember asking his brother as to buying out Perley or selling to Paul; that he presumed his brother told him about it, but did not remember what was said; that he got the impression his brother was getting a good trade in both cases; that his brother told him, at the time of paying the $900, that he had paid most of the debts of Stowell & Perley, and was going to pay some that day; and that the remaining indebtedness of his brother to him was about $800.

The schedule of creditors filed by the insolvent debtor was put in by agreement, showing debts to the amount of $3868. The schedule of property was also put in by agreement, showing harness stock and trimmings, " sundry notes and accounts and book of accounts," shop furniture, a wagon, a watch, and household furniture; no values being carried out.

Evidence was offered, but excluded, to show that a witness who had known the debtor and his place of business for several years did not in September 1864, or at any time, know of his being possessed of any property except his stock in business. The plaintiff testified that his firm were large creditors of the debtor

and that he did not doubt the credit of the debtor till October 3d 1864; that he trusted him because he had always paid his bills. The plaintiff offered to show that the notes and accounts which came into his hands as assignee were worthless; but the evidence was excluded. A witness testified that on the 8th of October 1864 the property at the debtor's shop on Stage Street was appraised by him, and he thought it then worth $2880. There was also evidence, admitted against the defendant's objection, tending to show that in the spring of 1865 Paul sold the property then at the shop on Stage Street to the defendant, and it was again appraised, and some of it was the same that had been sold by the debtor to Paul.

Upon this evidence, the jury returned a verdict for the defendant, under directions from the judge to do so; and the plaintiff alleged exceptions.

*H. Carter*, for the plaintiff.

*D. Saunders, Jr., & S. B. Ives, Jr.*, for the defendant.

BY THE COURT. There was undoubtedly sufficient evidence to go to the jury upon some parts of the case. They might have found upon the evidence that when the defendant received the payment from the insolvent debtor, which this action is brought to set aside and recover back, the debtor was insolvent and designed to give him a preference. But this is not sufficient, unless it is also proved that the defendant, at the time he received the payment, had reasonable cause to believe the debtor insolvent. This is a fact to be found by the jury; but to authorize them to find the fact, it must be established by competent and sufficient evidence. If there is no evidence in the case from which it is competent for the jury to infer or find that fact, then the plaintiff has not maintained his action, and it is the duty of the court to instruct the jury to that effect.

A majority of the court are of opinion that there was no evidence which would support a verdict for the plaintiff upon this part of the case, and that the ruling at the trial was right. The direct evidence introduced by the plaintiff tended to prove that the defendant had no knowledge or belief that the debtor was insolvent. And there was nothing in the circumstances on

which the plaintiff relied, which had any legal tendency to prove that the defendant was aware of any fact which would indicate insolvency. It did not appear that the debtor had failed to meet any obligation as it became due. It was not shown that the defendant was aware of any debts, except those named in the bond on which he was surety, and those due to himself. There was no evidence that he had any reason to suppose that the debts due to Stowell & Perley were not abundantly sufficient to meet the liabilities of the firm ; or that the debtor had not, as he professed to have done, substantially paid those debts before the sale to Paul. If the jury could have found, upon all the evidence before them, including that which was rejected, and which perhaps should have been admitted that the defendant knew or had reason to know the extent of his brother's property at the time he received his money, there was nothing in all of it which could have authorized them to find that he knew or had cause to suspect that he then owed debts to a greater amount than his property was ample to dis charge. *Exceptions overruled.*